UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

WILLIAM ATTIX, on behalf of himself
and all others similarly situated,

    Plaintiff,
v.                                                          **CLASS ACTION COMPLAINT**

CARRINGTON MORTGAGE SERVICES, LLC,         **JURY DEMAND**
a Delaware Corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff William Attix brings this action, on behalf of himself and all others similarly situated, against Defendant Carrington Mortgage Services, LLC ("Carrington") and states:

**NATURE OF ACTION**

1. Carrington is a mortgage servicer specializing in high-risk, high-interest residential loans. While many homeowners pay their mortgage by automatic withdrawal or by mailing a check at the same time every month, sometimes borrowers need to wait until the last minute to make their payment. In that case, they may need to make their mortgage payment by phone or over the internet to ensure that the payment is processed on time. Unfortunately, many unscrupulous lenders and servicers take advantage of consumers in these situations and charge additional and unauthorized "processing fees" in connection with mortgage payments by phone or internet to line their own pockets at the consumer's expense.

2. Such abusive collection practices surrounding "processing fees" have run rampant across the country in recent years. So much so, the Consumer Financial Protection Bureau recently

issued its Compliance Bulletin 2017-01[1] cautioning lenders and servicers to "review applicable laws to determine whether they may charge" processing fees, and to "[r]eview underlying debt agreements to determine whether such fees are authorized by the contract."

3. Despite knowing full well that "processing fees" are not expressly authorized by standard-form mortgages or permitted by law, Carrington charges its customers extra "processing fees" for making mortgage payments online or over the phone. Not only are these "processing fees" not expressly authorized by the mortgage agreement, they are well in excess of the cost to Carrington for processing these payments. Upon information and belief, Carrington has reaped millions of dollars through this secret profit center by charging these extra "processing fees" to struggling homeowners.

4. The question at the heart of this lawsuit is whether Carrington, by charging its customers extra fees to make their mortgage payments online or by phone, violates the Federal Fair Debt Collection Practices Act ("FDCPA"), the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*, or the mortgage contract itself, or alternatively whether Carrington has been unjustly enriched. This question has the same answer for Plaintiff and each of the borrowers who paid these extra fees. Indeed, some mortgage servicers have settled similar claims on a nationwide class action basis, as in *McWhorter et al. v. Ocwen Loan Servicing, LLC*, 2:15-cv-01831 (N.D. Ala.). There is no doubt that this action involves important and cutting edge legal issues regarding conduct that nearly all banks and mortgage servicers are committing, now

---

[1] Available at https://files.consumerfinance.gov/f/documents/201707_cfpb_compliance-bulletin-phone-pay-fee.pdf (last accessed May 21, 2020).

that practices such as receiving kickbacks from force-placed insurance have been prohibited as a result of many lawsuits that were joined in by federal regulators.[2]

5.      Plaintiff William Attix is the owner of a house, located at 3809 Brooke Lakes Drive, Fort Meade, Florida 33841, which is subject to a mortgage serviced by Carrington. Carrington has a uniform practice of charging illegal and improper "processing fees" when payments on the mortgage are made online or over the phone, although neither the mortgage nor federal or Florida law expressly authorizes those fees. Carrington has charged these "processing fees" to Plaintiff, who has paid them during the Class Period as defined below. Accordingly, Plaintiff seeks relief for himself and all others similarly situated for violations of the FDCPA, FCCPA, FDUTPA, for breach of contract, and for unjust enrichment.

---

[2] Plaintiff's counsel has filed multiple class action lawsuits regarding these practices and has since spearheaded class action litigation in over 32 nationwide class actions brought against the largest banks or mortgage servicers and the force-placed insurers across the country, reaching 30 settlements to date totaling over $4.2 billion dollars for the proposed nationwide classes of over 5.3 million homeowners. *See e.g.*, *Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233 (S.D. Fla.) (final approval granted); *Saccoccio v. JPMorgan Chase Bank N.A.,* No. 13-cv-21107 (S.D. Fla.) (final approval granted); *Diaz v. HSBC Bank (USA), N.A.,* No. 13-cv-21104 (S.D. Fla.) (final approval granted); *Fladell v. Wells Fargo Bank, N.A.,* No. 13-cv-60721 (S.D. Fla.) (final approval granted); *Hamilton v. SunTrust Mortg., Inc.,* No. 13-cv-60749 (S.D. Fla.) (final approval granted); *Hall v. Bank of Am., N.A.,* No. 12-cv-22700 (S.D. Fla.) (final approval granted); *Lee v. Ocwen Loan Servicing, LLC,* No. 14-cv-60649 (S.D. Fla.) (final approval granted); *Braynen v. Nationstar Mortg.*, LLC, No. 14-cv-20726 (S.D. Fla.) (final approval granted); *Wilson v. Everbank,* N.A., No. 14-cv-22264 (S.D. Fla.) (final approval granted); *Montoya v. PNC Bank, N.A.,* No. 14-cv-20474 (S.D. Fla.) (final approval granted); *Almanzar v. Select Portfolio Servicing,* No. 14-cv-22586 (S.D. Fla.) (final approval granted); *Jackson v. U.S. Bank, N.A.,* No. 14-cv-21252 (S.D. Fla.) (final approval granted); *Circeo-Loudon v. Green Tree Servicing, LLC,* No. 14-cv-21384 (S.D. Fla.); *Beber v. Branch Banking & Trust Co.*, No. 15-cv-23294 (S.D. Fla.) (final approval granted); *Ziwczyn v. Regions Bank, No.* 15-cv-24558 (S.D. Fla.) (final approval granted); *McNeil v. Selene Finance, LP,* No. 16-cv-22930 (S.D. Fla.); *McNeil v. Loancare, LLC,* No. 16-cv-20830 (S.D. Fla.) (final approval granted); *Edwards v. Seterus, Inc.*, No. 15-cv-23107 (S.D. Fla.) (final approval granted); *Cooper v. PennyMac Loan Servicing*, LLC, No. 16-cv-20413 (S.D. Fla.) (final approval granted). *Strickland, et al. v. Carrington Mortgage Services, LLC, et al.*, 16-cv- 25237 (S.D. Fla.) (final approval granted for three separate settlements); *Quarashi et al v. Caliber Home Loans Inc. et al.;* 16-9245 (D.N.J.) (final approval granted).

## PARTIES

6. Plaintiff is a citizen and resident of Polk County, Florida and owns property located at 3809 Brooke Lakes Drive, Fort Meade, Florida 33841.

7. Defendant Carrington is a limited liability company existing and incorporated pursuant to the laws of Delaware with its principal place of business in Anaheim, California. Defendant is therefore a corporate citizen of Delaware and California. Defendant is amenable to service of process c/o CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

## JURISDICTION AND VENUE

8. Plaintiff has standing to bring claims under the FDCPA, the FCCPA and the FDUTPA because he was directly affected by violations of these statutes, was subjected to Defendant's illegal and improper debt collection activities, and suffered injury in fact as a direct consequence of Defendant's illegal and improper debt collection activities, in the form of unlawful "processing fees" paid.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than Carrington. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as Plaintiff's individual claims are brought by a Florida citizen against a Delaware or California citizen, and, given the nature of the claims and the declaratory and injunctive relief sought, the amount in controversy is greater than $75,000.00, exclusive of interest and costs.

10. This Court has personal jurisdiction over Carrington because Carrington is authorized to do business and is conducting business throughout the United States, including in

Florida. Carrington services mortgages in Florida and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of Florida to render the exercise of jurisdiction by this Court permissible.

11.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in the Southern District of Florida. Further, a significant portion of the classes sought to be certified and represented in this matter reside in this District.

12.     All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## FACTUAL ALLEGATIONS

13.     Plaintiff is the owner of his home located at 3809 Brooke Lakes Drive, Fort Meade, Florida 33841. Plaintiff financed this purchase with a mortgage that was entered into on July 29, 2008. A copy of the mortgage is attached as **Exhibit A** (the "Mortgage").

14.     Plaintiff's mortgage was serviced by Carrington at all relevant times, who obtained the servicing rights for the mortgage (and/or to whom the mortgage was transferred) while his loan was in default. The mortgage does not expressly provide for charging processing fees for making payments online or over the phone.

15.     The FDCPA prohibits servicers, like Carrington, from collecting any amount in addition to the principal obligation unless the amount is explicitly stated in the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1). Furthermore, such processing fees are not expressly authorized by Florida state law.

16.     Carrington charged Plaintiff "processing fees" during the FDCPA Class Period while he was in default on his mortgage, including one as recent as May 2020, when he was charged a $10 fee for making a payment to Carrington over the phone.

17. Where, like here, neither the contract creating the debt nor applicable law expressly authorizes the charging of processing fees, such as those charged by Carrington, such fees have been held unlawful because they violate the FDCPA and FCCPA when the debt collector retains any portion of the fee instead of passing the entire fee through to the payment processor.

18. Carrington does not pass the entire fee to a payment processor and instead retains a considerable portion thereof. It is well known in the payment processing industry that third-party processors such as Western Union charge a small fraction of the amounts Carrington charges as "processing fees." Carrington's records will demonstrate the exact amount it retains for each processing fee charged.

## CLASS ACTION ALLEGATIONS

19. As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

A. **Class Definitions**

20. Plaintiff seeks to represent the following Classes:

**Nationwide FDCPA Class:** All individuals in the United States who, during the applicable limitations period, paid a processing fee to Carrington for making a payment online or over the phone in connection with any residential mortgage loan owned or serviced by Carrington, and whose mortgage was acquired by Carrington when such loans were delinquent on loan payment obligations. All employees of Carrington, the Court, and Plaintiff's counsel are excluded from this class.

**FCCPA Class:** All individuals in the state of Florida who, during the applicable limitations period, paid a processing fee to Carrington for making a payment online or over the phone in connection with any residential mortgage loan owned or serviced by Carrington. All employees of Carrington, the Court, and Plaintiff's counsel are excluded from this class.

**FDUTPA Class:** All individuals in the state of Florida who, during the applicable limitations period, paid a processing fee to Carrington for making a payment online or over the phone in connection with any residential mortgage loan owned or serviced by Carrington. All employees of Carrington, the Court, and Plaintiff's counsel are excluded from this class.

**Breach of Contract Class:** All individuals in the state of Florida who, during the applicable limitations period, paid a processing fee to Carrington for making a payment online or over the phone in connection with any residential mortgage loan owned or serviced by Carrington. All employees of Carrington, the Court, and Plaintiff's counsel are excluded from this class.

**Unjust Enrichment Class:** All individuals in the state of Florida who, during the applicable limitations period, paid a processing fee to Carrington for making a payment online or over the phone in connection with any residential mortgage loan owned or serviced by Carrington. All employees of Carrington, the Court, and Plaintiff's counsel are excluded from this class.

21. Plaintiff reserves the right to modify or amend the definition of the proposed Class before or after the Court determines whether such certification is appropriate as discovery progresses.

### B. Numerosity

22. The Class is comprised of hundreds, if not thousands, of customers throughout the United States, many of whom pay their mortgages online or over the phone. The Class is so numerous that joinder of all members of the Class is impracticable. The precise number of class members is unknown to Plaintiff but is easily identifiable through Defendant's records.

### C. Commonality/Predominance

23. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

    (a) whether Carrington's practice of charging a "processing fee," which is not expressly authorized by contract or any provision of existing law, violates the FDCPA, the FCCPA and the FDUTPA;

    (b) whether Carrington's practice of charging a "processing fee," which is not expressly authorized by contract or any provision of existing law, constitutes a breach of Plaintiff's and the class members' mortgage contracts;

    (c) whether Carrington has been unjustly enriched at the expense of Plaintiff and the Class members as a result of Carrington's charging and collection of "processing fees," which are not expressly authorized by contract or existing law;

    (d) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

    (e) whether Plaintiff and Class members are entitled to other appropriate remedies, including injunctive relief.

### D. Typicality

24. Plaintiff's claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above and have mortgages serviced by Carrington just like Plaintiff, and Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members. It is well known in the mortgage industry that mortgages generally do not expressly authorize processing fees to be charged to make a payment online or over the phone.

### E. Adequacy of Representation

25. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes. Plaintiff anticipates no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiff has chosen to be represented by the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

26. The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed Class members are based on the common course of conduct by Carrington to charge illegal "processing fees" to Plaintiff and the unnamed Class members.

27. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

28. As a result, when determining whether common questions predominate, courts focus on the liability issue. If the liability issue is common to the Class, as it is here, common questions will be held to predominate over individual questions.

### G. Superiority

29. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

   (a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

   (b) Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

   (c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

   (d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

   (e) Individual suits would not be cost effective or economically maintainable as individual actions; and

   (f) The action is manageable as a class action.

### H. Requirements of Fed. R. Civ. P. 23(b)(2)

30. Carrington has acted and refused to act on grounds generally applicable to the classes by engaging in a common course of conduct to charge illegal "processing fees" to Plaintiff

and the unnamed Class members, thereby making appropriate final injunctive relief with respect to the classes as a whole.

**COUNT I**
**For Violations of the Fair Debt Collection Practices Act,**
**15 U.S.C. § 1692,** *et seq.*
**(On behalf of Plaintiff and Members of the Nationwide Class)**

31. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–30 as if fully set forth herein.

32. This cause of action is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(2)(b).

33. It is a violation of the FDCPA for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

34. At all times material, Carrington was and is a "debt collector" under the FDCPA because it regularly collects debts owed others and acquired Plaintiff's loan and the loans of the Nationwide Class members when those loans were in default. 15 U.S.C. § 1692a(6).

35. At all times material, Plaintiff and the members of the Nationwide Class were "consumers" because each was a natural person obligated to pay the mortgage debts at issue. 15 U.S.C. § 1692a(3).

36. At all times material, Plaintiff's and the Nationwide Class's debts were "debts" because they were each an obligation of a consumer to pay money arising out of a transaction in which the property that was the subject of the transaction was primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

37. The "processing fees" charged to Plaintiff and members of the Nationwide Class were incidental to the consumer debts.

38. Carrington had no legal right to seek collection of (or to actually collect) any "processing fees" from Plaintiff and members of the Nationwide Class. Defendant had and still has the underlying contracts in its possession, custody or control, which do not expressly authorize these "processing fees," and Defendant therefore had actual knowledge that it had no legal right to collect these fees.

39. The "processing fee" is not expressly authorized by the mortgage contracts of Plaintiff and the members of the Nationwide Class or by Federal law, but Carrington collected these fees anyway. In doing so, Carrington violated 15 U.S.C. § 1692f(1).

40. As a direct and primary result of Carrington's violation, Plaintiff and members of the Nationwide Class have been harmed. Plaintiff and the Class members are entitled to actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a)(1); 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1692k(a)(3).

### COUNT II
### For Violations of the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.*
### (On behalf of Plaintiff and Members of the Florida Classes)

41. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–30 as if fully set forth herein.

42. This cause of action is brought pursuant to the Florida Consumer Collection Practices Act, section 559.55, Fla. Stat., *et seq*.

43. At all times material, Plaintiff and the members of the Florida Classes were "debtors" or "consumers" as defined in section 559.55(8), Florida Statutes, because each was a natural person obligated to pay the mortgage debts at issue.

44. At all times material, Plaintiff's and the Florida Classes' debts were "debts" or "consumer debts" as defined in section 559.55(6), Florida Statutes, because they were each an obligation of a consumer to pay money arising out of a transaction in which the property that was the subject of the transaction was primarily for personal, family, or household purposes.

45. Section 559.72(9) provides that "[i]n collecting consumer debts, no person shall [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

46. The "processing fees" charged to Plaintiff and members of the Florida Classes were incidental to the consumer debts.

47. However, Defendant had no legal right to seek collection of (or to actually collect) any "processing fees" from Plaintiff and members of the Florida Classes. Defendant had and still has the underlying contracts in its possession, custody or control, which do not expressly authorize the "processing fees," and Defendant therefore had actual knowledge that it had no legal right to collect the processing fees.

48. Defendant had actual knowledge that the "processing fee" is not expressly authorized by the mortgage contracts of Plaintiff and the members of the Florida Classes or by Florida law, and therefore knowingly violated Section 559.72(9), Florida Statutes, by claiming and attempting to enforce a debt which was not legitimate and not due and owing.

49. As a direct and primary result of Defendant's FCCPA violations, Plaintiff and others similarly situated have been harmed. Plaintiff and the Class members are entitled to actual damages, statutory damages, declaratory and injunctive relief, and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

**COUNT III**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**§ 501.201, Florida Statutes, *et seq.***
**(On behalf of Plaintiff and Members of the Florida Classes)**

50. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–30 as if fully set forth herein.

51. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

52. Plaintiff and Class members are consumers as defined by section 501.203, Fla. Stat. Carrington is engaged in trade or commerce within the meaning of the FDUTPA.

53. Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

54. Carrington's unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

55. Carrington has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

56. Plaintiff and Class members are consumers who have been aggrieved Carrington's unfair and deceptive practices by paying a "processing fee" to Carrington for making a payment online or over the phone in connection with their residential mortgage loans owned or serviced by Carrington.

57. The harm suffered by Plaintiffs and consumers in the Classes was directly and proximately caused by the deceptive and unfair practices of Carrington, as more fully described herein.

58. Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiff and consumers in the Classes make claims for actual damages, attorneys' fees and costs.

59. Carrington still utilizes many of the deceptive acts and practices described above and is still secretly retaining money from every "processing fee" it charges consumers. Plaintiff and Class members have suffered and will continue to suffer irreparable harm if Carrington continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiff and Class members to obtain both declaratory or injunctive relief to put an end to Carrington's unfair and deceptive scheme.

**COUNT IV**
**Breach of Contract**
**(On behalf of Plaintiff and Members of the Florida Classes)**

60. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–30 as if fully set forth herein.

61. Plaintiff's mortgage contract and the mortgage contracts of members of the Florida Classes do not provide for or authorize a "processing fee."

62. Defendant, in servicing the mortgage loans of Plaintiff and members of the Florida Classes, sought to collect, and did in fact collect from Plaintiffs and members of the Florida Classes, a "processing fee" not provided for or authorized in the mortgage contracts.

63. In collecting a "processing fee" not authorized or agreed to in the mortgage contracts, Defendant breached the mortgage contracts.

64. As a direct and proximate result of Defendant's breach, Plaintiff and members of the Florida Classes suffered actual damages, in the form of payment of non-contractual "processing fees."

## COUNT V
### Unjust Enrichment
### (On behalf of Plaintiff and Members of the Florida Classes)

65. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–30 as if fully set forth herein.

66. Plaintiff pleads this count for unjust enrichment in the alternative to his count for breach of contract.

67. Carrington charged Plaintiff and members of the Florida Classes a "processing fee" for payments made on their debts, and such fee was not authorized under the mortgage contracts entered into or by Florida law.

68. Plaintiff and consumers in the Florida Classes conferred upon Carrington non-gratuitous payments of the "processing fees." Carrington appreciated, accepted and/or retained, in whole or in part, the non-gratuitous benefits conferred by Plaintiff and members of the Florida Classes, with full knowledge and awareness that the "processing fees" were not authorized by the mortgage contracts or by Florida law.

69. Carrington profited from its unlawful collection and retention of the "processing fees" it charged at the expense of Plaintiff and members of the Florida Classes, under circumstances in which it would be unjust for Carrington to be permitted to retain the benefit. Under common law principles of unjust enrichment, Carrington should not be permitted to retain the benefits of this unjust enrichment.

70. Because Carrington's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Florida Classes is unjust and inequitable, Plaintiff and members of the Florida Classes are entitled to, and hereby seek disgorgement and restitution of Carrington's wrongful profits, revenue, and benefits in a manner established by the Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

a. Certifying the Nationwide and Florida Classes as requested herein;

b. Awarding Plaintiff and members of the Classes actual and statutory damages;

c. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and consumers in the Florida Classes;

d. Awarding declaratory and injunctive relief as permitted by law or equity, including declaring Carrington's practices as set forth herein to be unlawful and enjoining Carrington from continuing those unlawful practices as set forth herein, and directing Carrington to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e. Awarding statutory damages, as appropriate;

f. Awarding attorneys' fees and costs; and

g. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: May 26, 2020.                     Respectfully submitted,

By: */s/ Adam Moskowitz*

Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman

- 16 -

Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis, Esq.
Florida Bar No. 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Counsel for Plaintiff and the Class*